BRAXTON C. BROWN, Respondent, v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 4, 1886.

1. NEGLIGENCE—TEST OF LIABILITY—CASE ADJUDGED.—Where it is not claimed that there was any culpable negligence on the part of the servants of a railroad company, in operating a train, which

causes injury, to fix upon the company a liability, it must be maintained, *first*, that it was violating a duty in obstructing a way; and, *second*, that this wrongful act was the proximate cause of the injury. *Held*, that *here* there is no natural or necessary connection between the obstruction of the street crossing and the injury.

2. ——— WHAT IS PROXIMATE CAUSE.—The wrongful act must be the efficient cause of the injury. There must also be such connection in the relation of the cause and effect that the influence of the wrongful act should predominate over other supervening causes, and combine with them to produce the result. And while, under certain conditions, the first wrong-doer may be held liable although subsequent intervening negligence or cause contributes to the result, yet, while such independent agent does not always arrest causation, so as to relieve the party first doing the wrong from the consequences thereof, such intervening act must be of the character which a reasonable, prudent person would ordinarily expect to flow from his act as a natural or probable result.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.

*Reversed.*

The facts are stated in the opinion.

GEORGE S. GROVER, for the appellant.

I. The complaint does not state a cause of action, at common law; and the obstructing of the public crossing or highway, was not the proximate cause of the injury. *Powell v. Devenney*, 3 Cushing 301; *Schmidt v. R. R.*, 83 Ill. 405; *Bosch v. R. R.*, 44 Iowa 402.

II. The judgment should have been for defendant. There could be no recovery under the statute. Section 2124, Rev. Stat.; *Walton v. R. R.*, 67 Mo. 56. Nor at common law, without proof of negligent management of the train. *Swearingen v. R. R.*, 64 Mo. 73; *Wallace v. R. R.*, 74 Mo. 594. Nor for blocking the crossing, as that was not the proximate cause of the injury. *Clark v. R. R.*, 39 Mo. 191; *Harlan v. R. R.*, 65 Mo. 25; *Henry v. R. R.*, 76 Mo. 293.

J. G. WYNNE, and G. F. DAVIS, for the respondent.

I. The petition avers that by reason of the negli-

gence of defendant in allowing its train to remain across the public crossing, the cattle were killed and injured. It is. not claimed that plaintiff is entitled to recover either under the statute or a city charter, but at common law, on account of the negligence of the defendant.

II.   The only points made by defendant that have any application to this case are :    That the complaint does not state a cause of action at common law, and that the blocking of the public crossing or highway was not the proximate cause of the injury.   As to the *first* point, see *Garner v. H. & St. Jo. R. R.*, 34 Mo. 289 ; 1 Sutherland on Damages (1 Ed.) 27–30.   As to the *second* point, see 1 Sutherland on Damages (1 Ed.) 27–30 ;  Sedgwick on Measure of Damages (4 Ed.) 83–97.

PHILIPS, P. J.—This is an action to recover damages against the defendant, a railroad corporation, for injury to certain of plaintiff's cattle.    After the matters of inducement, the petition alleges that, ''at the time the said cows were killed and injured, a switch joined and attached to the main track of this defendant's road on either side of its depot ; that on or about the said nineteenth day of May, 1882, said defendant wilfully and negligently obstructed the public highway and crossing then and there being across the main track and switch of the defendant's road, at said station of Bedford, by running one of its freight trains on said switch and across said public crossing and highway, and by permitting the same to be and remain across said public highway and crossing for a period of time more than two hours' duration, and immediately preceding and at the time plaintiff's cattle were killed and injured, as aforesaid. · That plaintiff's cattle were in the habit of and accustomed to cross this defendant's road at the said public crossing, for the purpose of grazing on the range. That while the public crossing was thus blocked and obstructed, and while plaintiff's cattle were waiting to cross said road, another train came up and passed on the main track of defendant's road, and run over and killed and injured said cattle,'' etc.

The cause was submitted to the court, without the intervention of a jury, on the following agreed statement of facts:

"1. It is agreed that on or about the nineteenth day of May, 1882, plaintiff was the owner of three cows, one of the value of thirty dollars, and the other two of the value of thirty-five dollars each.

"2. That on or about the said date, an engine and train of defendant's run over and killed one of said cows of the value of thirty dollars, one of the value of thirty-five dollars, and injured and damaged the other cow to the amount of twenty dollars, at and within the switch limits of what was formerly known as Bedford station, on said sailroad, in Grand River township, Livingston county, Missouri.

"3. That at said station there was at the time a switch joined and attached to the main track of defendant's road, on either side of its depot, and that on or about said day the defendant's servants, in charge of the train of cars, blocked and obstructed a public highway and crossing then and there running across said switches and main track of defendant's road, at said station of Bedford, by running one of the freight trains of defendant on said switch and across said public crossing, and by permitting the same to be and remain across said public crossing for more than two hours immediately preceding and at the time of said injury, and that there was room on said side track to have opened said train at said crossing.

"4. That plaintiff's cattle were in the habit of crossing said main track and switches on said public crossing, for the purpose of grazing on the range.

"5. That while said crossing was blocked, as aforesaid, and while plaintiff's cattle were waiting to cross said road, another train came up and passed on the main track of defendant's road, and run over and killed and injured said cattle, as aforesaid.

"6. That said freight train, that blockaded said

crossing aforesaid, was waiting upon said track for the passage of another freight train, which last named train was the train that caused the injury. Said Bedford station being the regular meeting point for said freight trains. Said freight train being delayed at said station for the time above stated, by reason of the other train being two hours behind its regular time, which last named train killed and injured said stock within the switch limits of said station.

"7. That defendant is and was a corporation duly organized under the laws of Missouri.

"8. This cause is submitted to the court sitting as a jury, upon the foregoing agreed statement of facts, and if the court shall be of the opinion that under the pleadings and the facts as agreed upon, the plaintiff is entitled to recover, judgment shall be entered in his favor for eighty-five dollars and costs. Otherwise the judgment shall be for the defendant."

The court found for the plaintiff, and entered judgment accordingly. Defendant has brought the case here on appeal.

I. The facts being agreed upon, the question for our determination is, does the law arising on the facts support the verdict and judgment?

Counsel have discussed a variety of matters, supposed to arise on this record. But it occurs to me that the controlling question is, was the injury to the cattle the proximate result of the wrongful act of defendant in obstructing the crossing at the highway? As the cattle were not killed by the train standing on the crossing, and it is not pretended that there was any culpable negligence on the part of the defendant's servants in operating the train that collided with the cattle, therefore, to fix upon defendant a liability, it must be maintained, first, that the defendant was violating a duty to the public in obstructing the crossing, and, second, that this wrongful act was the proximate cause of the injury.

It may be conceded that defendant occupied the crossing for an unnecessary length of time, especially so

when it is admitted that there was ample room on the switch for an opening in the train.    For any damage directly traceable to this obstruction the defendant was unquestionably answerable.

The second inquiry, however, as to whether the injury was the proximate result of the negligent act, is more difficult to answer.    Few questions are presented for judicial determination more complex, and often metaphysical and perplexing, than the ascertainment of the dividing line between proximate and remote cause in such actions.    So much so is this true that the most learned and experienced judges have been forced to say, that: "to a sound judgment must be left each particular case."    The supreme court of the United States, in *Insurance Company v. Friend* (7 Wall. 49), speaking of the vast array of authorities to which counsel had referred, say :    "It would be an unprofitable labor to enter into an examination of these cases.    If we could deduce from them the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations."

I deduce from the text writers and adjudications the following general rules, pertinent to the case at bar : The wrongful act of the defendant must be the efficient cause of the injury, without which the injury would not have occurred.    There also must be such affinity, or connection, in the relation of the cause and effect that the influence of the wrongful act should predominate over other supervening causes, and combine with them to produce the result.    And while, under certain conditions, the first wrong-doer may be held liable, although subsequent intervening negligence or cause contributes to the result, yet, while such independent agent does not always arrest causation, so as to relieve the party doing the first wrong from the consequences thereof, such intervening act must be of the character which a reasonable, prudent person, would ordinarily anticipate or expect to flow from his act as a natural or probable re-

sult. As said by Wardlaw, J., in *Harrison v. Berkley* (1 Strobh. L. 525–548) : "I understand by this, not that they (the consequences) should be such as, upon a calculation of chances, would be found likely to occur, nor such as extreme prudence might anticipate, but only that they should be such as have actually ensued one from another, without the occurrence of any such extraordinary conjunction of circumstances, or the intervention of any such extraordinary result as that the usual course of nature should seem to be departed from ; that which is immediate cannot be regarded as unnatural ; that which is reasonably to be expected will be regarded, although it may be considerably removed."

A few cases, relevant to the one at bar, will illustrate the rules. In *Powell v. Deveney* (3 Cush. 301), the defendant's servant left his truck standing by the sidewalk on a public street, with the shafts shored up by a plank. On the other side of the street, and nearly opposite, another truck loaded, with horses attached, not, however, belonging to defendant, was left by the driver standing, leaving barely sufficient space for a third vehicle to pass between. A third driver of a truck, in attempting to pass between them, with due care, struck defendant's truck, causing the shafts to fall on to the pavement, on which the plaintiff was passing, knocking her down and breaking her leg. It was held that defendant was liable. This, and other kindred cases, are clearly distinguishable from the one under consideration, because the shafts were not only so left in the street as to invite collision with other vehicles, but were carelessly left in dangerous proximity to the sidewalk, and were the very instrument which defendant's negligent act put in motion causing the injury.

In *Schmidt v. Chicago, etc., Railroad Company* (83 Ill. 405–411), a pedestrian stepped into a hole in the sidewalk, which the city had neglected to repair, and stumbling over this defect he fell upon an adjacent railroad track and was killed by a passing train. It was held that the city was liable, because its negligence was the

active agent that threw deceased onto the railroad track. This case further holds that, if after stumbling over the defect in the street, the party had regained his feet and gone onto the track and been injured, the city would not have been liable.

So here, the cattle, by the obstruction in the street, were not precipitated onto the other track where the incoming train ran them down; but after they halted, in front of the obstruction, they stood back, of their own motion, on the other track, where they were injured.

Where defendant negligently suffered his fence to get out of repair, through which his neighbor's horse escaped into his close, and was there killed by a haystack falling upon him, the damages were held to be too remote from the negligent act of permitting the fence to be out of repair. *Powell v. Salisbury*, 2 Ton. & Jer. 391.

The case, so far as I have been able to find, which more nearly approaches this in principle, as applied to the facts, is that of *Bosch et al. v. The B. & M. Railroad Company* (44 Iowa 402). Between the plaintiff's property and the river lay a street, contiguous to the river. The defendant filled up the river at this point with deposits, increasing the distance from the water to plaintiff's residence, and occupied the street with railroad tracks and houses. The plaintiff's house took fire and was destroyed, by reason, as claimed, of the inability of the fire company to gain ready access to the water. It was held that the defendant was not liable, as the injury was too remote. The court say: "If any damages were recoverable for the obstruction of the street by an improper construction of defendant's road, thus depriving plaintiff of convenient access to the river, they were recoverable by reason of the obstruction of the street, and simply because the street was obstructed, and not by reason of a fire, which could not be extinguished because defendant occupied the street with a railroad. * * * The building of the railroad tracks,

and the widening and filling the street had no connection with the fire.   *   *   *   They are independent acts, and their influence in the destruction of plaintiff's property is too remote to be made the basis of recovery."

In the case at bar, if there had been any necessary or natural connection between the act of temporarily obstructing the street crossing and the coming of the train that made the collision, I could discover some reasonable basis for this action.     But the coming of the train which did the injury was entirely independent of the obstruction of the crossing.     It was an instrumentality, or operating cause, which the obstructing train had no agency in putting in motion.     It would have come just as it did had the offending train stood anywhere else, or, perhaps, if it had not existed at all.     True it is, it may be said that the obstruction of the passway was the immediate cause of the cattle halting where they did.   But suppose they had been struck down, while so standing, by a flash of lightning, or swept away by a tornado, or crushed by the falling of an adjacent building, could it be said that the obstruction of the crossing was the proximate cause of the injury, or that such a calamity ought to have been reasonably anticipated as likely to ensue from the obstruction of the street?     Neither could it be said, with sense, that the first act put in motion the elements, or the physical force that razed the building. There were, it seems to me, too many intervening agencies, not promoted by the wrongful act, between it and the injury, to sufficiently connect it with the result.   In the first place, the facts do not indicate that defendant had any knowledge that the cattle were in the habit of passing that way to their range; and, second, when defendant's servants did discover the cattle standing there it must be held, to bind defendant, that they should reasonably have expected the cattle would persistently remain in that situation, awaiting the removal of the train; third, that the cattle would probably not move out of the way on the approach to the station of the incoming train; and, fourth, that those managing the

approaching train would not or could not avoid a collision with the cattle at such a point, where the coming train would naturally be supposed to move slowly and cautiously into the station, and be well in hand by the engineer.

That the injury should happen as it did was, it seems to me, not within the range of probability which defendant's servants should be held to have anticipated. The cattle were not hemmed in by the obstruction across the street. The way of retreat was open to them. The injury, under the circumstances, is most extraordinary, without the direct agency and fault of the servants in charge of the incoming train.

Had a driver of a private team, by reason of his negligence and thoughtlessness, upset his wagon on this crossing, so as to obstruct the way, and frighten the cattle back, and, while they stood there looking on, the train had come down upon them and killed them, could it be entertained by a court that the driver's negligence was the proximate cause of the injury? His misconduct, producing the temporary obstruction to the highway, and causing the cattle to halt there, had nothing to do with the coming of the railroad train, nor could it be maintained that he should have reasonably anticipated such a conjuncture of concurring causes, even had he known that the train was expected about that time.

I am of opinion that the damages in this case are too remote, and the judgment, on the agreed statement of facts, should have been for the defendant. The other judges concurring, Ellison, J., in the result, the judgment of the circuit court is reversed.