HERBERT, Appellant, v. WIGGINS FERRY COM-
PANY, Respondent.

St. Louis Court of Appeals, May 17, 1904.

1. MASTER AND SERVANT: Safe Place to Work: Contributory
Negligence. Where a number of ship carpenters of skill and
long experience were given general orders to dismantle the
stern wheel of a steamboat and to select from an abundance
of material such as was necessary to make scaffolding, hold
the wheel in place and otherwise render the work safe, and one
of them selected, to hold the wheel in place, a rope which was
weak and insufficient, another one of such carpenters could not
recover damages for injuries received by reason of the breaking
of the rope, which caused the wheel to revolve and the scaffold
to fall.

2. ———: ———: Proximate Cause. Although the evidence
showed that the difficulty of holding the wheel in place was
increased by leaving the pitmans attached and that the rope
would have been strong enough to hold the wheel if the pitmans

had been detached, the breaking of the rope was nevertheless the proximate cause of the injury and the negligence of the fellow-servant of the injured man in selecting the insufficient rope with the pitmanson would prevent his recovery.

3. ——: ——: **Assumption of Risk.** While it was the duty of the master to furnish his servants a safe place to work, the failure to remove the pitmans was not negligence on the part of the master, for it was the duty of the carpenters to remove them if necessary to make the work safe, or to select a rope strong enough to hold the wheel in position with the pitmans attached. Failing to do so, they assumed whatever risk there was in undertaking the work as they did with a knowledge of all the facts.

Appeal from St. Charles Circuit Court.—*Hon. R. D. Rodgers,* Judge.

Action for personal injuries. Appeal from order sustaining motion to set aside verdict in plaintiff's favor and grant new trial.

AFFIRMED.

*A. R. Taylor* and *T. C. Bruere* for appellant.

There was evidence to support the verdict; this was conceded by the trial judge, as the verdict was not disturbed on this ground. "When the details of the construction of an appliance and its inspection are before the jury, so that the case does not stand alone on the fact that the bridge fell and the servant was injured," the principle that the mere fact that the appliance proves defective makes not a prima facie case does not apply. Bowen v. Railroad, 95 Mo. 274; Russ v. Railroad, 112 Mo. 53; Henry v. Railroad, 113 Mo. 536; Miller v. Railroad, 109 Mo. 356.

*Thomas E. Ralston* for respondent.

(1)   Where a master, as in the case at bar, has provided an adequate and freely accessible stock of suitable and sufficiently strong ropes, materials and appliances, from which competent servants, or mechanics, are allowed to make selections for the doing of the particular work which they are directed to do, the master is not liable for mistakes made by them, or one or more of them, either as to the method, or manner adopted in doing the work, or in the selection of unsuitable or weak materials, ropes and appliances.  It follows, therefore, that the court below erred in refusing to give defendant's instruction 1A, a demurrer to the evidence; defendant's instruction 2A, that under all the evidence plaintiff was not entitled to recover, and also in giving plaintiff's instructions 1 and 2.   Bowen v. Railway, 95 Mo. 277; Bohn v. Railroad, 106 Mo. 429; Miller v. Railway, 109 Mo. 356; Roberts v. Tel. Co., 166 Mo. 378; Ross v. Walker, 139 Pa. St. 42; Prescott v. Engine Co., 176 Pa. St. 459; Cregan, Admr., etc., v. Marston, 126 N. Y. 568; McKinnon v. Norcross, 148 Mass. 533; Maher v. McGrath, 58 N. J. L. 469; Beesley v. W. F. Wheeler Co., 103 Mich. 196; Betaja v. Mining Co., 106 Mich. 463.
(2)   There is no evidence in this case that the wrecking of the wheel of the steamboat "Julia," whilst said pitmans were attached, made said work more than "ordinarily" (or at all) "dangerous," as assumed and put to the jury in plaintiff's instruction 1.    (3)   These four competent ship carpenters could, if they had so chosen, detached these pitmans.  The methods chosen by them, without direction from the foreman, was to wreck this wheel without detaching the pitmans, and even if that method was more dangerous (of which there is absolutely no evidence) than wrecking the wheel with the pitmans detached, no liability can be imposed on defendant therefor.  1 Bailey on Personal Injuries Relating to Master and Servant, secs. 1121-1123; Moore v. Railroad, 146 Mo. 582, 54 L. R. A. 117; Ulrich v. Rail-

road, 51 N. Y. Supp. 5-7; Hussey v. Coger, 112 N. Y. 614; New Pittsburg C. & C. Co. v. Peterson, 14 Ind. App. 634. (4) Wrecking the wheel of a steamboat is similar, in law, to wrecking or repairing a house or other structure or machine, and the doctrine of a safe place to work has no proper application, and the risk incident thereto was assumed by plaintiff's husband. 54 L. R. A., note 5, 140; Clark v. Liston, 54 Ill. App. 578; Mc-Glynn v. Brodie, 31 Cal. 376; Spinning Co. v. Achord, 84 Ga. 14; 1 Labatt's Master and Servant, secs. 268-269, p. 614.

### STATEMENT.

On November 4, 1901, Anton Herbert, with three other ship carpenters employed by defendant, was engaged in dismantling the wheel of the steamer "Julia," a stern-wheel boat belonging to the defendant. The part of the scaffold upon which Herbert was standing at work was caused to fall by a partial revolution of the wheel. Herbert went down with the scaffold and was injured. The evidence tends to show that two of his ribs were broken near the backbone, that the ends of the broken ribs penetrated his lungs and the wound caused traumatic pneumonia of which he died on November 27, 1901. The plaintiff is the widow of Herbert, and as such sues to recover the damages she sustained on account of the death of her husband.

The material averments of the petition put in issue by the answer are as follows:

"That while the plaintiff's husband, Anton Herbert, was in the due discharge of the duties of his employment on a scaffold provided by the defendant for the purpose, at said place, said scaffold was caused to fall by the turning of a shaft with which it was connected, and plaintiff's husband was caused to fall and sustain injuries from which he died November 27, 1901, having been so injured on the fourth day of November, 1901, and the plaintiff avers that said injury and death

of her husband was directly caused by the negligence of the defendant and its foreman and agent in charge of said work, in this, that the doing of said work with reasonable safety to plaintiff's husband required, that whilst said work of dismantling the wheel of said steamboat was being done, the pitmans attached to the shaft and crank should be detached so as to prevent a strain upon said shaft and prevent the wheel from turning whilst said work was in process, yet defendant and its said agent negligently caused said work to be done without detaching said pitmans and thereby directly caused said injury and death of the plaintiff's husband.

"That whilst said work was being done, owing to said negligence of defendant and its said agent in failing to detach said pitmans, said shaft was caused so great a strain as to break the rope holding said wheel and cause said shaft to revolve, throwing down said scaffold and causing the plaintiff's husband to fall and be injured as aforesaid.

"And the plaintiff further charges that the defendant and its said agent were negligent in that the rope furnished by the defendant, to hold said wheel in place whilst said work was being done, was old, weather-worn, rotten and too weak for said purpose, as defendant and its agent in charge of supplying suitable appliances for said work well knew, and owing to said defective condition of said rope and its insufficiency for said use, it was caused to break and cause said wheel and shaft to revolve and cause the injury and death of plaintiff's husband as aforesaid. And plaintiff further charges that the defendant and its said agent were further negligent in that they failed to provide for the plaintiff's husband a place reasonably safe to do said work and thereby directly contributed to cause the injury and death of the plaintiff's husband.

"That by the death of her husband, as aforesaid, the plaintiff has lost his care, maintenance and support

to her damage in the sum of five thousand dollars, for which sum she prays judgment.''

The answer set up the following defense:

''And for the first and separate answer and defense to plaintiff's petition, defendant says that during the month of November, 1901, it was engaged in repairing steamboats in the city of St. Louis; that on the second day of November, 1901, it had on its marine ways for repairs the steamer ''Julia,'' afterwards and now called the ''Belle of Calhoun;'' that it was necessary to wreck or dismantle the wheel of said boat in order to put on new arms and buckets to said wheel, and that in performing that operation it was necessary to revolve said wheel from time to time; that at said time said wheel was at rest and in perfectly safe condition for such work to be done with safety to the men who should do the same.

''And defendant avers that on said second day of November, 1901, it had in its employ four ship carpenters and fellow-servants of long experience and skill in that art, to-wit: plaintiff's deceased husband, Anton Herbert, Christopher or Chris Zeller, Joseph Wagner and A. J. Schlichtig; that defendant then had on hand and freely accessible for the use of said four ship carpenters and fellow-servants an ample supply of safe and sufficiently strong ropes, wheel irons, lumber and appliances to have enabled said four ship carpenters to have wrecked the wheel of said steamer ''Julia,'' which they were directed to do by defendant's foreman in charge of said work on the second day of November, 1901, with entire safety to themselves. And defendant avers that it and its said foreman left the selection of the said ropes, tools, wheel irons and lumber necessary for the wrecking of said wheel, to the judgment and discretion of said four ship carpenters and fellow-servants, and that in the prosecution of said work the rope which they selected to hold said wheel in position broke and said wheel revolved about one-fourth

of a revolution, thereby throwing down the scaffolding which they had erected and upon which plaintiff's deceased husband, Anton Herbert, was standing, thereby fracturing two of his ribs, and otherwise injuring him. And this defendant further avers that said Anton Herbert and each of his said three fellow-servants, caused and directly contributed to said injuries of said Herbert, by carelessly and negligently selecting an old water and weather-worn rope of about one and one-quarter inches in diameter, which afterwards broke, to hold said wheel in place, when they might have freely selected a newer, larger and sufficiently strong rope for that purpose, which would have held said wheel securely in place, and that they, and each of them, carelessly and negligently omitted to double the rope so selected by them, thereby adding to its strength and making it perfectly safe for the purposes for which they were using it; that plaintiff's deceased husband, Anton Herbert, and said A. J. Schlichtig caused and directly contributed to the said injuries of said Herbert by carelessly and negligently subjecting said rope, with which they had lashed said wheel in place, to an unnecessary strain, whereby it was broken, by removing all the packing from the cylinder and piston rod to which the pitman attached to the crank of said wheel, was attached, and that plaintiff's deceased husband, Anton Herbert, and each of his said fellow-servants, caused and directly contributed to the said injuries of the said Anton Herbert, in this, that they so carelessly and negligently conducted the operation of wrecking said wheel that the scaffolding or platform adjoining said wheel, and upon which they stood from time to time, was thrown down and said Anton Herbert injured, as aforesaid, by the one-fourth revolution of said wheel, when the rope holding same was broken, as aforesaid, and defendant avers that the injuries sustained by plaintiff's deceased husband, Anton Herbert, heretofore, to-wit, on the fourth day of November, 1901, were caused and sustained by

the careless and negligent acts aforesaid and not otherwise; and that plaintiff's deceased husband, Anton Herbert, did not die of said injuries so sustained by him as aforesaid, and that this action is brought to recover damages for such injuries so sustained by said Anton Herbert as aforesaid.

"And having fully answered, defendant prays the court to be hence discharged with its costs in this behalf expended."

The reply was a general denial of the new matter in the answer.

The evidence shows that the "Julia" had been drawn out of the water and raised on the marine ways of the defendant's shipyard at the foot of Marceau street, in the city of St. Louis, for the purpose of having her wheel dismantled. The shaft of the wheel extended from one cylinder timber to the other. These timbers were twenty or twenty-five feet apart and extended about twelve feet from each side of the stern of the boat. The wheel was fifteen or sixteen feet in diameter and the stern of the boat was raised and blocked up so as to clear the wheel and allow it to be revolved. The supports of the scaffold, erected at the rear of the wheel, were six timbers, called spalls, one at each end of the wheel and one in the middle, and one about four or five feet to the rear of each of the first three spalls. These timbers were braced and cross-braced to each other, and a plank was nailed to the outer two and to a timber, called a shore, which was placed under each of the two cylinder timbers. Planks were laid on this framework for the carpenters to stand on while dismantling the wheel. A. J. Schlichtig was the boss of the defendant's shipyard and had fifty or sixty ship carpenters working under him at the time Herbert was injured. The scaffold was erected by Herbert, the deceased, John Schlichtig, Chris Zeller and Joseph Wagner, all of them experienced ship carpenters and famil-

iar with the work of dismantling the wheel of a boat. The timbers and planks for the erection of the scaffold were in the defendant's shipyards and, so far as the evidence shows, were selected by the workmen themselves.

A. J. Schlichtig, the boss, testified that he ordered these four carpenters to erect the scaffold; that he told them to be careful about it, to make it good and strong, but was not present when the scaffold was erected and did not superintend its erection; that he passed by the scaffold on several occasions and at one time ordered the men to put an additional spall under the cylinder timber on the larboard or left-hand side of the wheel. This evidence of the boss was corroborated by two of plaintiff's witnesses and was not contradicted by the evidence of any witness in the case.

The evidence shows that the pitmans, which were over twenty feet long, could have been detached from the wheel but were not. They were of great weight and their weight increased the difficulty of holding the wheel in place while it was being dismantled, and Wagner, a witness for plaintiff, testified that he thought they should have been detached from the wheel and that he would have detached them if he had been ordered to do so. Zeller, a witness for plaintiff, testified that when ship carpenters wreck a wheel they are required to block it up and see that everything is safe. To hold the wheel in place, John Schlichtig (one of the carpenters) got a rope that was on the boat, and the workmen passed the rope around an arm of the wheel and fastened it to one of the cylinder timbers. This rope proved insufficient. It broke and the wheel moved about one-fourth of a revolution and either the shock caused by the breaking of the rope and the sudden movement of the wheel, shook down the part of the scaffold Herbert was on, or some part of the wheel or a pitman came in contact with some part of the scaffold or its supports and caused it to fall. The evidence shows that on two occasions previous to the accident the workmen had slackened

the rope that held the wheel in place and revolved the wheel about one-fourth of a revolution and no part of it came in contact with the scaffold or any of its supports, so it reasonably appears that the scaffold was so constructed as to allow the wheel to revolve without coming in contact with it.

The petition counted on the insufficiency of the rope and negligence in not detaching the pitmans from the wheel. It was shown on the trial that there were on hand and accessible to the workmen, ropes that were abundantly sufficient to hold the wheel with the pitmans on, and that John Schlichtig of his own accord selected the one that was used, and the charge of negligence in furnishing an unsuitable rope was practically abandoned at the trial and the negligence relied on was the failure of the defendant to detach the pitmans from the wheel, as appears from the following instruction asked by plaintiff and given by the court:

"2. If the jury find from the evidence that the rope used in fastening the wheel mentioned in the evidence was insufficient, and should further find from the evidence that a fellow-servant of the deceased did not exercise ordinary care in selecting said rope for the said purpose, yet if the jury further find the facts to be as set forth in instruction number one given at the instance of the plaintiff, and further find from the evidence that a failure by said foreman to cause said pitmans to be detached from the cranks of said wheel also directly contributed to cause said injuries to said Herbert, then the plaintiff is entitled to recover."

Wagner's testimony tends to show that the pitmans should have been detached from the wheel. On the trial the evidence of defendant tended to show that the pitmans were never removed unless it was intended to repair or put in new cylinder timbers, or to take out the entire wheel, which was not the intention in respect to the wheel of "Julia."

At the close of all the evidence the defendant of-

fered an instruction in the nature of a demurrer to the evidence which the court refused to give. The case went to the jury under instructions. The verdict was for plaintiff. A motion for new trial was filed and sustained on the ground that the trial court was of the opinion that it erred in giving instructions numbers one and two for the plaintiff. From the order granting a new trial, plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. Defendant insists that its instruction, in the nature of a demurrer to the evidence, at the close of all the evidence should have been sustained. The evidence shows that Herbert, Zeller, Schlichtig and Wagner were all ship carpenters of from twenty-five to thirty years experience and that all of them had worked for the defendant for a number of years and were familiar with its shipyard, knew what material was on hand and available for erecting the scaffold, knew that there was on hand, from which they could have made a selection, an abundant supply of good and sufficient rope by which the wheel could have been held in place with the pitmans on or off. They were as familiar with the work they were ordered to do as was the boss, knew how the scaffold should be erected and what was necessary to hold the wheel in place while they were dismantling it. The uncontradicted evidence shows that the work of erecting the scaffold and dismantling the wheel was not superintended by the boss but was undertaken by the carpenters themselves under a general order to erect a scaffold and dismantle the wheel. The evidence further shows that Schlichtig, one of the carpenters, selected the rope with which to hold the wheel in place and that the others consented to the use of this rope. The rope selected proved to be insufficient. It had the appearance of an old and worn rope. Its condition was known to Schlichtig and must have been known to the other carpenters who used it, hence there is no escaping

the conclusion that Schlichtig was negligent in the selection of the rope, and the reasonable inference is that the other carpenters, including the deceased, were also negligent in making use of it after it had been selected by their coemployee, and it was conceded on the trial that for this act of negligence, in the selection of the rope, defendant was not liable. It seems to me that this concession puts an end to plaintiff's case. The evidence shows that it was the breaking of the rope that caused the wheel to revolve and the scaffold to fall, that but for the fact an unsuitable rope was selected by Schlichtig the wheel could not have revolved and the scaffold would not have fallen. The breaking of the rope, therefore, was the proximate and efficient cause of the injury and the plaintiff can not recover. Brown v. Railway, 20 Mo. App. 222; Hicks v. Railway, 46 Mo. App. 304; Reed v. Railway, 50 Mo. App. 504; Kirkpatrick v. Railway, 71 Mo. App. 263; Klockenbrink v. Railroad, 81 Mo. App. 351; Killian v. Railway, 86 Mo. App. 473; Brash v. St. Louis, 161 Mo. 433; Dunn v. Railway, 98 Mo. 652; Holman v. Railroad, 62 Mo. 562; Stoneman v. Railroad, 58 Mo. 503. But plaintiff contends that if the pitmans had been detached the rope would never have been broken. The evidence tends to sustain this contention and for the sake of the argument it may be conceded that the rope was strong enough to hold the wheel if the pitmans had been detached. With this concession the failure to detach the pitmans was not the proximate or direct cause of the injury but the remote cause, a cause that was brought into play by the negligence of Schlichtig in selecting an unsuitable rope to hold the wheel with the pitmans on, and furnishes no ground for complaint against the defendant. Stanley v. Railway, 114 Mo. 606.

2. It is contended that it was the duty of the boss to furnish the plaintiff's husband a safe place to work, that he knew the pitmans were on and that it was extra hazardous to work on the wheel without detaching them

and it was his duty to have seen that they were taken off. The evidence does not show that the work was extra hazardous with the pitmans on; what it does show is that there was more strain on the rope used to hold the wheel with the pitmans on than there would have been if they had been removed. But it shows conclusively that there were ropes at hand, accessible to the men, which would have held the wheel with the pitmans on and which could not possibly have been broken by the wheel. The men knew where the ropes were and could have gotten them. They also knew as much about the strain on the wheel with the pitmans on as did the boss and were at liberty to take them off if they had chosen to do so. The four carpenters were ordered to erect the scaffold. They were experienced ship carpenters, as much so as was the boss. They were entirely competent to do the work they were ordered to do. They were not superintended in the work nor does the evidence show that there was any necessity that the work should have been superintended by the boss. They were told to make the scaffold good and strong. They might have taken the pitmans off if they had thought it necessary, if it was customary to remove them they knew of the custom and departed from it on their own volition for they had neither orders nor advice from the boss in respect to the pitmans, and whatever danger or increased risk there was by leaving them on was a risk which they assumed with full knowledge of all the facts. As was said by BLACK, J., in Bowen v. Railway, 95 Mo. 277, "A servant is not a mere machine, employed to drive a nail here or a spike there, where directed by the master or some one representing him. Many things involving the exercise of judgment may properly be left to the servant. Hence it has been held, where the master employs competent workmen, and provides suitable material for staging and intrusts the duty of erecting it to the workmen, as a part of the work which they are engaged to perform that he

is not liable to one of the workmen for injuries resulting to one of them from the falling of the staging. The negligence in such cases resolves itself into negligence of a fellow-servant; and the principle has been applied under a variety of circumstances. Kelley v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485; Armour v. Hahn, 111 U. S. 313; Peschel v. Railroad, 62 Wis. 338.'' See also Bohn v. Railway, 106 Mo. l. c. 429; Miller v. Railway, 109 Mo. l. c. 356; Roberts v. Tel. Co., 166 Mo. l. c. 378-79; Moore v. Railway, 146 Mo. l. c. 582; Prescott v. Engine Co., 176 Pa. St. 459; Ross v. Walker, 139 Pa. St. 42.

In Ross v. Walker, supra, it is said: ''The master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses in the selection of material out of the mass provided for them; they must use their own judgments as to the manner of handling it, as to the sufficiency and stability of the scaffolding they erect for themselves, and the amount of burden to be put upon such structures. No employer could bear the burden of legal responsibility for every blunder or neglect on the part of each and all of his employees. The fact that one employee is more skillful than another, or has had greater experience, and is so deferred to by others, does not change his relation to his employer or to his fellows. Nor does a difference in rank or grade of service change the rule. When the character of the business requires it, the master is as much bound to provide his workmen with a reasonably competent foreman as to provide them with tools, but in either case his liability ceases when he has made a suitable selection. He is neither bound to provide the best tools and machinery, nor the highest grade of skill in his foreman, but he is bound to provide that which is reasonably safe and sufficient in both cases, and having so done he has discharged his duty. What remains to be done is that each workman, whatever his rank

Herbert v. Wiggins Ferry Co.

or skill or experience, shall, with reasonable diligence and intelligence, discharge his duty towards his employer and his fellows.

"It is thus apparent that, whenever it is sought to hold the master liable for the act or neglect of his foreman, the question to be first considered is whether the negligence complained of relates to anything which it was the duty of the principal to do. If it does, then the principal is liable; for he must see at his peril that his own obligations to his workmen are properly discharged. If it does not, he is not liable; for all his workmen are liable to each other for the consequences of their negligence, respectively, and he does not insure them against each other by the mere fact of employing them.''

If through carelessness or because of a mistake in judgment, the rope selected for use on this occasion was unsuitable for the purpose for which it was wanted or, if suitable, was so negligently or carelessly put upon the shaft as to be cut or weakened unnecessarily and the accident was due to either of these causes it is clear that plaintiff had no cause of action. It was the duty of the carpenters, to whom was committed the task of wrecking the wheel, to select suitable timbers for the erection of the scaffold and to erect it in a safe and substantial manner and, knowing that the pitmans were on the wheel, it was their duty to select a rope suitable to hold the wheel in position in the condition in which they found the wheel when they undertook to wreck it or, if it was necessary to remove the pitmans to make the wheel safe it was their duty to have removed them, and for any neglect on the part of any of them or all of them to perform any of these things necessary to their safety, the defendant is not liable.

Judgment affirmed. *Reyburn* and *Goode, JJ.,* concur.