TAMIS TSOULUFAS, Respondent, v. NATIONAL ENAMELING & STAMPING CO. and HERMAN H. WOERHEIDE, Appellants.

St. Louis Court of Appeals, July 16, 1909.

1. MASTER AND SERVANT: Safe Appliance: Personal Injuries: Proximate Cause. In an action for personal injuries sustained by plaintiff while operating for defendant a stamping machine which was defective, the evidence is examined and held that the defect in the machine was the proximate cause of plaintiff's injury.

2. ———: ———: Vice-Principals: Negligence. The plaintiff was employed by defendant to operate a stamping machine. He noticed a defect in the machine and called the foreman's attention to it and was told to go ahead with his work. In an action for injuries sustained by the plaintiff soon afterwards, *held,* that defendant was aware of the danger to plaintiff and was negligent in ordering him to continue operating the machine.

Appeal from the St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Jones, Jones, Hocker & Davis* for appellants.

Defendants' demurrers to the evidence offered at the close of plaintiff's evidence in chief should have been sustained by the court. Stepp v. Railway, 85 Mo. 229; Brown v. Railway, 20 Mo. App. 226; Anderson v. Box Co., 103 Mo. App. 382; Pohlmann v. Am. Car & Fdy. Co., 123 Mo. App. 219. Defendants' demurrers offered at the close of all the evidence should have been sustained by the court. Feary v. Railway, 162 Mo. 105; Erwin v. Railway, 94 Mo. App. 297; Logan v. Railway, 101 Mo. App. 189; Fugler v. Bothe, 117 Mo. 475; Matthis v. K. C., Etc., 185 Mo. 434; Blundell v. Mfg. Co., 189 Mo. 552; Chrismer v. Tel. Co., 194 Mo. 189.

*Jas. P. Kerr, B. E. Hamilton* and *Frank J. Wiget* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiff on account of personal injuries received through the negligence of the defendants. Plaintiff recovered and defendants appeal. At the time of his injury, plaintiff was in the employ of the defendant, National Enameling & Stamping Company, and the defendant, Woerheide, was foreman exercising the authority of the master over plaintiff's movements. The National Enameling & Stamping Company is a corporation, engaged in manufacturing stamped and pressed tin, granite and other metal ware. At the time of his injuries, plaintiff was engaged in operating a machine in the stamping or pressing of what is termed stovepipe collars. These stovepipe collars were pressed from light metal resembling tin or sheet-iron, and used for the purpose of encircling ordinary stovepipes at the point where they enter the wall or flue. The machine consisted of a lower die and a plunger, which descended thereon into the same. It was operated by steam power and made eight impressions per minute. It was plaintiff's duty to stand in front of this machine and insert some three or

four plates of metal therein by laying them evenly upon
the lower die during the interim the plunger was ascend-
ing, and before it descended to make the impression. Af-
ter the impression on the several sheets of metal had
been made by the descending plunger, it was the duty of
the plaintiff to remove the finished product or impressed
stovepipe collars from the machine with his right, and
insert three or four new sheets of metal with his left
hand, to the end another impression should be made
when the plunger descended. As stated the machine
made eight impressions per minute. This consumed
seven and one-half seconds for the plunger to descend,
make the impression upon the material resting upon the
die, and ascend for another operation. It ran contin-
uously after starting and the plaintiff was required to
prosecute his calling with diligence and dispatch. As
parcel of this machine, and embedded in the lower die
thereof, on which rested the sheets of metal while the
impression was being made by the descending plunger,
there were three spiral steel springs for the purpose of
lifting and throwing out of the die the finished product
as the plunger ascended or receded from making the
impression. The allegation of negligence relied upon
in the petition is that the defendant had suffered one of
the three steel springs mentioned to become defective in
that it failed to perform its office. That is to say, that
one of the springs referred to refused to operate and
lift one side of the completed stovepipe collars from the
die after the impression was made, and therefore the
other two springs, in performing their function, partly
lifted the completed collars out of the die in such a
crooked or twisted manner as to impede plaintiff's oper-
ations and required him to use his hand at times in aid
of the defective spring. By reason of this fact, while
plaintiff was at the same time removing the finished
collar and inserting several new sheets for impression,
the operation was so impeded by means of the defective
spring, as to cause the fingers of his left hand to be

caught and crushed beneath the descending plunger. And that defendant's foreman had been notified of the defective spring, etc. The particular averment of negligence in respect of the conduct of defendant Woerheide, the foreman in charge of the work, is to the effect that on the morning plaintiff was injured, upon discovering the machine was not performing properly, he called the matter to the attention of the foreman, Woerheide, who looked at it, assured him that the machine was all right, and instructed him to proceed with the work. Plaintiff was ignorant of mechanics and relied upon the assurance of the foreman to the effect that the machine was all right and continued his labors therewith for only a short time, when he was injured.

The evidence tended to prove the facts as stated, and that plaintiff's left hand was seriously and permanently injured by the descent of the plunger thereon while he was engaged with his right hand in removing the finished stovepipe collar which the defective spring had failed to dislodge and at the same time inserting with his left hand several sheets of new metal for impression, as was his duty. It stands conceded that plaintiff's conduct was not such as would warrant declaring him negligent as a matter of law. The principal argument advanced for a reversal of the judgment is to the effect that the court should have directed a verdict for the defendant on the theory that it does not appear the defective spring mentioned was the proximate cause of plaintiff's injury. It is true the defective spring is the negligence relied upon in the petition, and it is true as well that in order to entitle plaintiff to recover, it must appear probable that the defective spring operated proximately in a natural and continuing sequence, unbroken by an independent cause, to produce plaintiff's injury. [Lawrence v. Heidbreder Ice Co., 119 Mo. App. 319; Doss v. M. K. & T. Ry. Co., 135 Mo. App. 643, 116 S. W. 458; Banks v. Wabash R. R. Co., 40 Mo. App. 458; Brown v. Wabash R. R. Co., 20 Mo. App. 222, 227.

Now the argument advanced in this connection predicates in part upon the fact that plaintiff's left hand was injured while he was engaged in inserting therewith plates of metal for impression; and it is said, in view of this, the die had been cleared of the finished collar made by the last impression theretofore, and therefore, even though the spring was defective and refused to operate it did not induce the injury. In other words, it is said that had plaintiff's right hand been injured while in the act of removing the finished collar made by the last impression from the die because the defective spring had failed to perform its office and remove the same, then a recovery might be sustained for the reason it is probable the defective spring operated proximately to induce the injury. But it is argued, as the finished product had been removed and the plaintiff's left hand was injured while inserting new and unstamped plates of metal, the condition of the spring in no respect contributed to the injury for the reason its office had been performed by the plaintiff's act of removing the finished collar before the new metal sheets were inserted with his left hand, which was injured. Now in some cases the argument advanced might be sound, but certainly not in this case. Of course, if it appeared plaintiff had, with his right hand, removed the finished product which the defective spring had failed to remove, and after a considerable time had elapsed, deliberately inserted new plates of metal on a clear die with his left hand, which resulted to his injury, the defective spring could not be regarded as having operated proximately thereto. However, the judgment of the law must be given upon the precise facts presented; and these facts involved almost, if not quite, simultaneous action on the part of plaintiff in performing the duty, entailed by the defective spring, of removing the finished product with his right hand, and inserting as well new plates of metal with his left hand at the same time. Indeed, the petition proceeds

upon this theory. The petition avers that while plaintiff was proceeding with his work as directed by the foreman and while "attempting to remove the finished or stamped collar and to place another over the die, in the usual manner as plaintiff had been instructed by defendants, plaintiff's hand was struck by the plunger aforesaid," etc., etc. That is to say, the theory of the petition is that the plaintiff was performing the two acts of removing the stamped collar with his right hand which the defective spring had failed to remove, and inserting the new metal with his left hand at the same instant; and that because of the defective spring and the consequent operation with his right hand, the process of removal and insertion was so impeded as to entail injury upon the left hand. Now to recall the fact with reference to this matter: it appears this machine made eight impressions per minute. That is, that seven and one-half seconds were consumed in the descent of the plunger, making of the impression therewith, and ascent or receding thereof, for the purpose of making a second impression; about three and three-fourths seconds in ascending after the last or prior impression, and three and three-fourths seconds in again descending. For the plaintiff to perform his duty in these circumstances, it was incumbent upon him to employ both hands at the same time; that is to say, in so short a time available for the purpose, it was essential for plaintiff to be both highly alert and vigilant to perform the duty of the defective spring with his right hand and insert the new sheets of metal with his left. It therefore appears if the act of clearing the die of the stamped collar being performed by the plaintiff's right hand was thus impeded by the defective spring, so as to entail injury upon his left hand while inserting the new metal, then the defective spring operated proximately to his injury, for it was the failure of the spring to perform its part which impeded the movement of the left hand, and thus entailed the hurt. It is clear the evidence

tends to prove plaintiff's injury probably resulted at least as a consecutive consequence from the defective spring which impeded the operation of inserting new metal sheets with his left hand before the plunger descended. The assignment of error will be overruled.

The second instruction given by the court of its own motion, among other things, submitted to the jury the question as to whether plaintiff informed the foreman, defendant Woerheide, of the defective condition of the machine, and directed his attention to the spring, etc. On this feature of the case, the instruction, in effect, informed the jury that if plaintiff had so directed the foreman's attention to the irregular manner in which the machine was operating and the defective spring, and the foreman had assured him it was all right, to go ahead, then the plaintiff had the right to rely on the judgment of the foreman and to presume the machine was reasonably safe, unless it appeared to be obviously dangerous, etc. The argument levelled against this portion of the instruction is to the effect that there was no evidence to support it. It is said that plaintiff's testimony in this respect, tended to prove no more than that he called the foreman's attention to the irregularity of the machine a few moments before he was injured and that it was making peculiar sounds; that nothing whatever was said or indicated calling the foreman's attention to the defective spring. This argument proceeds upon a misapprehension of the facts to be found in the record. It is true plaintiff testified to the effect that he said to the foreman: "I am afraid that I don't know what is the matter with him—what makes him so noisy." (Plaintiff is a Greek and speaks the English language with difficulty.) He testified further in the same connection as follows: "And the foreman stayed behind me but a few seconds and looked how I work and he seen me to lose time because the punch was going up and down—the punch is going up and started to come down again and the spring it no lift." It is obvious

from this that the foreman was looking at the machine and saw that the spring failed to perform its duty. At another place in plaintiff's testimony, it appears he testified that he told the foreman the machine was not in good condition and "that the springs were not in good condition." Aside from this direct evidence, there is abundant inference arising from the whole testimony that plaintiff called the foreman's attention to the defective spring. The assignment of error will be overruled.

The judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* not sitting; *Goode, J.,* concurs.